UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| R. POWER BIOFUELS LLC, a Delaware limited liability company, on its own behalf, and derivatively for NORTH STAR BIOFUELS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AGRI BEEF CO., an Idaho corporation; ROBERT REBHOLTZ, an individual and Member Representative of NSB; TODD LINDSEY, an individual and Member Representative of NSB; and KIM STUART, an individual and Member Representative of NSB,<br><br>Defendants. | Case No. 1:14-cv-00390-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff R.Power Biofuels LLC brings this action individually and derivatively as a member of North Star Biofuels, LLC, a limited liability company. North Star's members include RPower and AB Bioenergy, LLC. The defendants are Agri Beef Co., an Idaho corporation, and three of North Star's Member Representatives – Robert Rebholtz,

Todd Lindsey, and Kim Stuart (collectively, "Member Representatives") – all of whom are Idaho citizens. RPower alleges derivative claims on behalf of North Star for the breach of the duty of good faith and fair dealing (Count One), breach of the duty of care and loyalty (Count Two), duress and economic coercion (Count Four), unjust enrichment (Count Five), constructive trust (Count Six), unconscionability (Count Seven), and injunctive relief (Count Eight), as well as a direct claim against the Member Representatives for breach of the duty of good faith and fair dealing and duty of care (Count Three). Subject-matter jurisdiction is based on diversity.

The Member Representatives argue that complete diversity does not exist. They have therefore moved to dismiss the Complaint. Defendant Agri Beef joined in the motion to dismiss. For the reasons set forth below the Court will dismiss RPower's derivative claims, but will allow RPower's direct claim against the Member Representatives to survive.

## BACKGROUND

RPower is the creation of Michael Doyle, a petroleum engineer and the "creative genius" behind the technology, and James Levine, a professional engineer and self-proclaimed innovator. *Levine Decl.* ¶ 2, Dkt. 8. In 2006, Doyle approached Levine with the idea for this new technology. *Id.* Doyle and Levine then formed Sauber Technologies LLC, a California limited liability company, to develop, test, and prove the efficacy of the technology. *Id.* ¶ 3. Doyle submitted a patent application for the technology, identifying Sauber as the owner. *Id.*¶ 5. The application remains pending. *Id.*

In 2009, after spending three years testing the technology and submitting a patent application, Doyle and Levine formed RPower as a Delaware limited liability company. *Id.* ¶ 6. Sauber gave RPower an exclusive license to the technology and together they continued to develop it for the next two years. *Id.* ¶ 8. In July 2011, seeking to capitalize on their "know how" and the emerging demand for biodiesel fuel, RPower successfully started a 2,000 gallon-per-day commercial production facility in Redwood City, California. The apparent success of this facility led RPower to begin soliciting and accepting angel investor funding with the goal of developing the business for a broader, ideally worldwide, platform. *Id.*¶ 10.

At this point, RPower and Defendant Agri Beef's paths converge. *Id.* ¶ 11. Agri Beef's goal of finding "environmentally positive profit activities" for its affiliate, AB Bioenergy, LLC, to pursue coincided with RPower's goal of finding investors to develop a global biodiesel business using the technology it had developed.

Agri Beef's affiliate, AB Bio, and RPower formed North Star to pursue this business opportunity. *Id.* ¶ 12/ At the outset, RPower and AB Bio were the sole members of North Star. As the sole members, each held a 50 percent membership and management interest in the company. *Operating Agreement,* §§ 16, 17. The Operating Agreement further provided that both RPower and AB Bio were to appoint three Members' Representatives to "do all things necessary or convenient to carry out the business of North Star." *Id.* § 18.b. RPower and Sauber also agreed to license to North Star their

"Existing Technology," which consisted of the patent application submitted by Sauber, and trade secrets relating to the use of that technology. *Id.*, § 2.8.1.

As part of deal, Agri Beef agreed to loan to North Star the $8 million estimated cost for construction and startup of the plant. *Levine* ¶ 12; *Loan Agreement*. The loan collateral included, among other things, the Existing Technology and RPower's ownership interest in North Star. *Loan Agreement*, pp. 8-9. RPower and Sauber guaranteed the loan. *Id.*, p. 16.

So far the project has not gone quite as planned. During the first year and a half of the project, North Star drew down the entire $8 million under the Loan Agreement, had the Loan Agreement maturity extended twice, and issued over $4 million in capital calls. *Rebholtz Decl.* ¶¶ 22-30. In July 2013, according to Agri Beef, North Star defaulted under the Loan Agreement.

Alleging that North Star had defaulted on the loan, Agri Beef sued RPower and Sauber as the guarantors of the loan. *AgriBeef Co. v. R. Power Biofuels, LLC, et al*, Case No. 1:14-cv-00298-BLW ("*Agri Beef* action"). On August 29, 2014, Agri Beef notified North Star that it intended to auction collateral on October 7, 2014. RPower responded by filing a counterclaim in the *Agri Beef* action, *id.* at Dkt. 11, and filing a motion for a temporary restraining order, *id.* at Dkt. 17. RPower also filed this action against Agri Beef and the Member Representatives. It filed a separate motion for a TRO in this action as well.

The Member Representatives now move to dismiss RPower's claims in this action. AgriBeef has joined this motion. Defendants argue that complete diversity does not exist because RPower is a necessary party, and its joinder would destroy diversity whether it is joined as a plaintiff or as a defendant.

## ANALYSIS

The federal court's diversity jurisdiction extends to "all civil actions where the matter in controversy exceeds ... $75,000 ... and is between ... [c]itizens of different States." 28 U.S.C. § 1332(a)(1). In cases where entities rather than individuals are litigants, diversity jurisdiction depends on the form of the entity. To illustrate, an unincorporated association such as a partnership has the citizenships of all of its members. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990). By contrast, a corporation is a citizen only of (1) the state where its principal place of business is located, and (2) the state in which it is incorporated. 28 U.S.C. § 1332(c)(1).

Although limited liability companies resemble both partnerships and corporations, the Ninth Circuit treats limited liability companies like partnerships for diversity purposes. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). In other words, "an LLC is a citizen of every state of which its owners/members are citizens." *Id.*

In the context of this case, this rule would presumably mean that complete diversity does not exist if North Star is deemed a necessary party. As noted above, North Star's members include RPower, most likely a California citizen,[1] AB Bio, an Idaho citizen, and a California limited liability company named Malpaso Energy LLC. North Star is therefore both a citizen of California and a citizen of Idaho. So if North Star is named as a plaintiff, complete diversity does not exist because North Star is an Idaho citizen and all Defendants are Idaho citizens. Likewise, if North Star is named as a defendant, complete diversity does not exist because North Star shares the same citizenship as RPower.

RPower argues, however, that North Star's joinder would not defeat jurisdiction. Relying primarily on a district court case from Maryland, *Beck v. CKD Praha Holding, A.S.*, 999 F.Supp. 652, 655 (D.Md.1998), RPower contends that North Star's citizenship may be ignored if antagonism exists between the entity's management and the member/owner bringing suit. In *Beck*, the Maryland district court posited that "the Supreme Court applies a different test in shareholder derivative suits to determine whether a nominal, but indispensable, corporate defendant defeats diversity jurisdiction."

---

[1] The Court refers to RPower is a citizen of California for ease of reference. It is unclear what RPower's citizenship is. But it makes no difference in the analysis because North Star shares the same citizenship as RPower no matter what RPower's citizenship may be.

*Id.* This test, according to the *Beck* court "is whether antagonism exists between the management of the corporation and the shareholder bringing suit." *Id.*

The Court is not convinced.

First, "*Beck* dealt with the proper alignment of the parties, which requires an inquiry into whether antagonism exists." *Gamrex, Inc. v. Schultz*, 2010 WL 3943910, *6 n. 11 (D. Haw. 2010). But North Star's alignment is not an issue before the Court. *Id.* And even if it were, it would not matter because, as explained above, diversity is destroyed whether North Star is aligned as a plaintiff or as a defendant. *Id.*

Second, contrary to *Beck*, most courts hold that a corporation is considered an indispensable party in a derivative action, and its citizenship *does* matter for diversity purposes. *Id.* Indeed, at least two federal district courts have directly considered *Beck's* interpretation of Supreme Court precedent regarding the antagonism doctrine and have deemed it "flawed." *Racetime Investments, LLC v. Moser*, 2013 WL 987834, *2 (E.D.Va. March 8, 2013); *Gamrex,* 2010 WL 3943910 at *6. And the Fourth Circuit has implicitly rejected it. *See, e.g., General Technology Applications, Inc. v. Exro Ltda,* 388 F.3d 114, 120 (4th Cir. 2004) (finding that court lacked diversity jurisdiction over derivative action brought on behalf of LLC by one member against another member, regardless of whether company was aligned as plaintiff or defendant).

Diversity jurisdiction is judged by the real parties in interest. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004). The *Beck* court identified the stockholder as the real party in interest and the corporation as the "nominal plaintiff." But, according

to Supreme Court precedent, in a derivative lawsuit, the corporation is the real party in interest, and the stockholder bring suit on the corporation's behalf is the nominal plaintiff. *Ross v. Bernard*, 396 U.S. 531, 538 (1970); *Koster v. Lumbermens Mutual Casualty*, 330 U.S. 518, 523 (1947). Applying this clear precedent, the Court can only conclude that the *Beck* court incorrectly dubbed the corporation the nominal party, and therefore incorrectly ignored the corporation's citizenship for diversity purposes.

Because North Star's citizenship cannot be ignored for diversity purposes, the Court must decide whether North Star is a necessary party. As explained above, the corporation is the real party in interest, *Koster,* 330 U.S. at 523 n. 2, and the stockholder "at best" is the nominal plaintiff, *Ross,* 396 U.S. at 539. "The corporation [therefore] is a necessary party to the action; without it the case cannot proceed." *Ross*, 396 U.S. at 538. Accordingly, RPower's derivative claims must be dismissed, as North Star's joinder destroys diversity.

RPower, however, also brings one direct claim against the Member Representatives for breach of good faith and fair dealing and duty of care (Count Three), and North Star would not necessarily be an indispensable party to this claim. But the Member Representatives argue that RPower's individual claim should be recast as derivative claims and also dismissed. The Court disagrees.

The analysis to distinguish between direct and derivative claims asks two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy."

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation." *Id.* at 1039. "The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.*

RPower's direct claim alleges that the Member Representatives "participated, in bad faith, in Agri Beef's plan to deprive [RPower] of its benefits conferred upon [RPower] by the Operating Agreement," including RPower's right to control the management and direction of North Star, RPower's financial interests in North Star and the technology, and RPower's right to maintain possession and control of the technology. *Compl.* ¶¶ 92-95. The alleged injuries are independent from any alleged injury to North Star. North Star is not necessarily harmed if RPower loses its right to control the direction and management of North Star. Nor would North Star be directly harmed if RPower lost is financial interest in North Star and its right to possess and control the technology. These alleged rights belong to RPower, not North Star, and any recovery for the alleged deprivation of these rights would inure directly to RPower. The Court will therefore allow RPower's direct claim against the Member Representatives to survive.

**ORDER**

**IT IS ORDERED that** Defendants Robert Rebholtz, Todd Lindsey, and Kim Stuart's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. 11) is GRANTED in part and DENIED in part. All of RPower's derivative claims against the Members

Representatives and Agri Beef are dismissed, but Count Three, RPower's direct claim against the Member Representatives, survives.

DATED: January 8, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court